UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED

2010 JAN 21  PM 3: 57

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

LARRY RUMBOUGH, individually
and on behalf of others similarly situated,
as a private attorney general;

      Plaintiff,

Case No. 6:10-cv-117-ORL-19KRS

-v-

EQUIFAX INFORMATION SERVICES LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.;
TRANS UNION LLC; CBC COMPANIES;
CHEXSYSTEMS COLLECTION AGENCY, INC.;
LEXISNEXIS RISK SOLUTIONS FL INC.;
LEXISNEXIS SCREENING SOLUTIONS INC.;
JEFFERSON CAPITAL SYSTEMS, LLC; MANN
BRACKEN, LLC; LAW OFFICES OF ERSKINE &
FLEISHER; BANK OF AMERICA CORPORATION;
HSBC CARD SERVICES, INC.; CHECKNET;
JPMORGAN CHASE & CO.; CAPITAL
MANAGEMENT SERVICES, LP; FIRSTSOURCE
ADVANTAGE, LLC; PFG OF MINNESOTA, INC.;
RICHARD J. BOUDREAU & ASSOCIATES, LLC;
ALLIANCEONE RECEIVABLES MANAGEMENT,
INC.; REGIONS BANK; GE CAPITAL LLC; NCO
FINANCIAL SYSTEMS, INC.; B-LINE, LLC;
B-REAL, LLC; PHILLIPS & COHEN ASSOCIATES,
LTD., CORP.; AVALON FINANCIAL SERVICES,
LLC; CAPITAL ONE BANK; FIRST PREMIER
BANK; COLLECTCORP CORPORATION;
SUNTRUST BANK; ACS EDUCATION SERVICES,
INC.; NATIONAL RECOVERY AGENCY, INC.;
LEADING EDGE RECOVERY SOLUTIONS, L.L.C.;
GALAXY PORTFOLIOS, LLC; AMERICAN
EXPRESS COMPANY; and CITIFINANCIAL, INC.;

      Defendants.

## COMPLAINT

    Plaintiff, Larry Rumbough, individually and on behalf of all others similarly situated, as a
private attorney general, hereby sues Defendants, EQUIFAX INFORMATION SERVICES

1

LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; CBC COMPANIES; CHEXSYSTEMS COLLECTION AGENCY, INC.; LEXISNEXIS RISK SOLUTIONS FL INC.; LEXISNEXIS SCREENING SOLUTIONS INC.; JEFFERSON CAPITAL SYSTEMS, LLC; MANN BRACKEN, LLC; LAW OFFICES OF ERSKINE & FLEISHER; BANK OF AMERICA CORPORATION; HSBC CARD SERVICES, INC.; CHECKNET; JPMORGAN CHASE & CO.; CAPITAL MANAGEMENT SERVICES, LP; FIRSTSOURCE ADVANTAGE, LLC; PFG OF MINNESOTA, INC.; RICHARD J. BOUDREAU & ASSOCIATES, LLC; ALLIANCEONE RECEIVABLES MANAGEMENT, INC.; REGIONS BANK; GE CAPITAL LLC; NCO FINANCIAL SYSTEMS, INC.; B-LINE, LLC; B-REAL, LLC; PHILLIPS & COHEN ASSOCIATES, LTD., CORP.; AVALON FINANCIAL SERVICES, LLC; CAPITAL ONE BANK; FIRST PREMIER BANK; COLLECTCORP CORPORATION; SUNTRUST BANK; ACS EDUCATION SERVICES, INC.; NATIONAL RECOVERY AGENCY, INC.; LEADING EDGE RECOVERY SOLUTIONS, L.L.C.; GALAXY PORTFOLIOS, LLC; AMERICAN EXPRESS COMPANY; and CITIFINANCIAL, INC.; and alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages brought for damages for violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq.*; for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*; and for damages for damages for violations of the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. §559(Part VI) *et seq.*

2. Plaintiff contends that the credit reporting agency Defendants have violated such laws by repeatedly and willfully issuing false consumer credit reports concerning Plaintiff, resulting in credit denials, credit delays, inability to apply for credit, a reduction in his credit score, financial loss, loss of use of funds, invasion of privacy, mental anguish, humiliation, a loss of reputation, and expenditures for attorney's fees and costs. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

3. Plaintiff contends that the collection agency Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect alleged but nonexistent debt, obtaining or furnishing his credit reports illegally, knowingly reporting false information to the credit reporting agencies, and refusing to properly investigate Plaintiff's disputes of information transmitted through the credit reporting agencies. In many cases they have conspired with each other in engaging in these actions. For the most part, Plaintiff's demands to the Defendants that they cease these illegal, and in some cases possibly criminal, activity, have met with either no response or continued illegal activity.

4. Upon belief and information, Plaintiff contends that many of these practices are widespread for some or all of the Defendants. Therefore, he is suing on behalf of all others similarly situated, and as a private attorney general. Plaintiff intends to propound discovery to Defendants identifying these other individuals who have suffered similar violations. He also intends to seek attorney's fees from Defendants as a private attorney general.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p, 15 U.S.C. §1692k and Fla. Stat. §559.77.

6. Venue is proper in this Circuit pursuant to 28 U.S.C. §1391b and Fla. Stat. §559.77.

7. This is an action for damages which exceed $75,000.00.

8. Plaintiff, LARRY RUMBOUGH, is a natural person and is a resident of the State of Florida.

9. Defendant, EQUIFAX INFORMATION SERVICES LLC ("Equifax"), is a Georgia limited liability company, authorized to do business in Florida.

10. Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is an Ohio corporation, authorized to do business in Florida.

11. Defendant, TRANS UNION LLC ("Trans Union"), is a Delaware limited liability company, authorized to do business in Florida.

12. Defendant, CBC COMPANIES ("CBC"), is an Ohio corporation, authorized to do business in Florida.

13. Defendant, CHEXSYSTEMS COLLECTION AGENCY, INC. ("ChexSystems"), is a Minnesota corporation, authorized to do business in Florida.

14. Defendant, LEXISNEXIS RISK SOLUTIONS FL INC. ("LexisNexis Risk"), is a Georgia corporation, authorized to do business in Florida.

15. Defendant, LEXISNEXIS SCREENING SOLUTIONS INC. ("LexisNexis Screening"), is a Minnesota corporation, authorized to do business in Florida.

16. Defendant, JEFFERSON CAPITAL SYSTEMS, LLC ("Jefferson"), is a Georgia limited liability company, authorized to do business in Florida.

17. Defendant, MANN BRACKEN, LLC ("Mann"), is a Georgia limited liability company, not authorized to do business in Florida.

18. Defendant, LAW OFFICES OF ERSKINE & FLEISHER ("Erskine"), is an unknown entity.

19. Defendant, BANK OF AMERICA CORPORATION ("Bank of America"), is a Delaware corporation, authorized to do business in Florida.

20. Defendant, HSBC CARD SERVICES, INC. ("HSBC"), is a Delaware corporation, authorized to do business in Florida.

21. Defendant, CHECKNET ("Checknet"), is an unknown entity.

22. Defendant, JPMORGAN CHASE & CO. ("Chase"), is a Delaware corporation, authorized to do business in Florida.

23. Defendant, CAPITAL MANAGEMENT SERVICES, LP ("Capital Management"), is a Delaware corporation, authorized to do business in Florida.

24. Defendant, FIRSTSOURCE ADVANTAGE, LLC ("Firstsource"), is a New York limited liability company, authorized to do business in Florida.

25. Defendant, PFG OF MINNESOTA, INC. ("PFG"), is a Minnesota corporation, authorized to do business in Florida.

26. Defendant, RICHARD J. BOUDREAU & ASSOCIATES, LLC ("Boudreau"), is a Massachusetts limited liability company, authorized to do business in Florida.

27. Defendant, ALLIANCEONE RECEIVABLES MANAGEMENT, INC. ("Allianceone"), is a Delaware corporation, authorized to do business in Florida.

28. Defendant, REGIONS BANK ("Regions"), is an Alabama corporation, authorized to do business in Florida.

29. Defendant, GE CAPITAL LLC ("GE"), is a Florida limited liability company, authorized to do business in Florida.

30. Defendant, NCO FINANCIAL SYSTEMS, INC. ("NCO"), is a Pennsylvania corporation, authorized to do business in Florida.

31. Defendant, B-LINE, LLC ("B-Line"), is an unknown entity.

32. Defendant, B-REAL, LLC ("B-Real"), is a Delaware limited liability company, authorized to do business in Florida.

33. Defendant, PHILLIPS & COHEN ASSOCIATES, LTD., CORP. ("Phillips"), is a New Jersey corporation, authorized to do business in Florida.

34. Defendant, AVALON FINANCIAL SERVICES, LLC ("Avalon"), is a Delaware limited liability company, authorized to do business in Florida.

35. Defendant, CAPITAL ONE BANK ("Capital One"), is an unknown entity.

36. Defendant, FIRST PREMIER BANK ("First Premier"), is a Delaware corporation, not authorized to do business in Florida.

37. Defendant, COLLECTCORP CORPORATION ("Collectcorp"), is a Delaware limited partnership, authorized to do business in Florida.

38. Defendant, SUNTRUST BANK ("SunTrust"), is a Georgia corporation, authorized to do business in Florida.

39. Defendant, ACS EDUCATION SERVICES, INC. ("ACS"), is a Delaware corporation, authorized to do business in Florida.

40. Defendant, NATIONAL RECOVERY AGENCY, INC. ("National"), is a Pennsylvania corporation, not authorized to do business in Florida.

41. Defendant, LEADING EDGE RECOVERY SOLUTIONS, L.L.C. (Leading), is an Illinois limited liability company, authorized to do business in Florida.

42. Defendant, GALAXY PORTFOLIOS, LLC (Galaxy), is an unknown entity.

43. Defendant, AMERICAN EXPRESS COMPANY ("American Express"), is a New York corporation, authorized to do business in Florida.

44. Defendant, CITIFINANCIAL, INC. ("CitiFinancial"), is a Maryland corporation, authorized to do business in Florida.

45. All conditions precedent to the bringing of this action have been performed, waived or excused.

## FACTUAL ALLEGATIONS

46. Equifax failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed,  was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

47. Experian failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

48. Trans Union failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

49. CBC failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated

notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

50. ChexSystems failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

51. LexisNexis Risk failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

52. LexisNexis Screening failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to

immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

53. On March 8, 2005, Plaintiff sent a letter to Jefferson demanding validation of an alleged debt. The letter was sent by certified mail and received by Jefferson on March 10, 2005.

54. Jefferson did not respond to the letter.

55. On December 15, 2005, Jefferson initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

56. On December 16, 2005, Jefferson initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

57. On July 13, 2006, Jefferson initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

58. On or about January 29, 2008, Jefferson sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

59. On or about January 29, 2009, Jefferson sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

60. On March 16, 2005, Mann initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

61. On July 29, 2005, Mann initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

62. On May 25, 2007, Mann initiated a hard pull of Plaintiff's credit report from ChexSystems without permissible purpose, thereby reducing his credit score.

63. In June 2007, Mann initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

64. On January 9, 2008, Mann initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

65. On April 25, 2005, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

66. On April 27, 2005, Erskine initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

67. On March 13, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

68. On March 14, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

69. On July 31, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

70. On August 31, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

71. Bank of America has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

72. Bank of America has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

73. Bank of America did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

74. On June 7, 2006, Bank of America initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

75. On October 7, 2006, Bank of America initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

76. On December 16, 2008, Bank of America initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

77. HSBC has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

78. HSBC has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

79. HSBC did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

80. On October 18, 2006, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

81. On May 24, 2007, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

82. On June 6, 2007, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

83. On March 27, 2007, Plaintiff sent a letter to Checknet demanding validation of an alleged debt. The letter was sent by certified mail and received by Checknet on April 2, 2007.

84. Checknet did not respond to the letter.

85. Checknet called Plaintiff on April 3, 2008, April 22, 2008, May 12, 2008, June 9, 2008, June 19, 2008, June 25, 2008, July 2, 2008, July 22, 2008, July 31, 2008, August 7, 2008, August 8, 2008, August 12, 2008, August 27, 2008, September 5, 2008, September 26, 2008, September 30, 2008, and October 22, 2008 attempting to collect on a nonexistent alleged debt.

86. Chase has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

87. Chase has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

88. Chase did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

89. On May 10, 2007, Chase initiated two hard pulls of Plaintiff's credit report from ChexSystems without permissible purpose, thereby reducing his credit score.

90. On or about September 1, 2009, Chase sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

91. On September 29, 2009 Plaintiff sent a letter to Chase demanding validation of the alleged debt. The letter was sent by certified mail and received by Chase on October 1, 2009.

92. Chase did not respond to the letter.

93. Upon belief and information, Chase transferred the account to Capital Management for collection on the alleged debt without disclosing that the debt was disputed.

94. On April 1, 2008, Capital Management initiated a pull of Plaintiff's credit report from Equifax without permissible purpose.

95. On or about April 5, 2008, Capital Management sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

96. Capital Management called Plaintiff on April 4, 2008, April 8, 2008, April 11, 2008, April 13, 2008, April 15, 2008, April 16, 2008, April 21, 2008, April 22, 2008, and April 25, 2008 attempting to collect on a nonexistent alleged debt.

97. On April 22, 2008, Plaintiff sent a letter to Capital Management demanding validation of the alleged debt. The letter was sent by certified mail and received by Capital Management on April 26, 2008.

98. On or about April 28, 2008, Capital Management sent Plaintiff a letter. It did not validate the alleged debt.

99. Upon belief and information, Capital Management transferred the account to Firstsource for collection on the alleged debt without disclosing that the debt was disputed.

100. Firstsource called Plaintiff on October 3, 2008, October 7, 2008, and October 8 attempting to collect on a nonexistent alleged debt.

101. On or about October 6, 2008, Firstsource sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

102. On October 14, 2008 Plaintiff sent a letter to Firstsource demanding validation of the alleged debt. The letter was sent by certified mail and received by Firstsource on October 20, 2008.

103. On or about November 11, 2008, Firstsource sent Plaintiff a letter. It did not validate the alleged debt.

104. Upon belief and information, Firstsource transferred the account to PFG for collection on the alleged debt without disclosing that the debt was disputed.

105. On April 6, 2009, PFG initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

106. Plaintiff has repeatedly disputed the inquiry with Trans Union. PFG has variously told Plaintiff that it never made any inquiry on Plaintiff's credit report or refuses to remove it.

107. PFG called Plaintiff on April 8, 2009 attempting to collect on a nonexistent alleged debt.

108. On or about April 11, 2009, PFG sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

109. On April 22, 2009 Plaintiff sent a letter to PFG demanding validation of the alleged debt. The letter was sent by certified mail and received by PFG on April 27, 2009.

110. On January 13, 2010, Patrick O'Shea of PFG called Plaintiff three times on his cell phone. The first time he hung up without leaving a message. The second time he left a message without identifying himself as debt collector. The third time he reached Plaintiff and identified himself as a debt collector. O'Shea informed Plaintiff that he was attempting to collect a debt and also informed Plaintiff that he was not attempting to collect a debt.

111. On January 14, 2010, Patrick O'Shea called Plaintiff again and identified himself as a debt collector. He insisted that the inquiry by PFG was a soft one and because of that PFG would not remove it from Plaintiff's credit report. Plaintiff insisted that his Trans Union credit report clearly indicated that it was a hard pull.

112. On May 14, 2007, Boudreau initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

113. On May 14, 2007, Boudreau initiated another pull of Plaintiff's credit report from Experian without permissible purpose.

114. On or about May 16, 2007, Boudreau sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

115. On or about May 16, 2007, Boudreau sent Plaintiff another letter attempting to collect on a nonexistent alleged debt.

116. On May 23, 2007, Plaintiff sent a letter to Boudreau demanding validation of the alleged debts. The letter was sent by certified mail and received by Boudreau on May 29, 2007.

117. Boudreau did not respond to the letter.

118. On February 24, 2009, Boudreau sent Plaintiff a letter attempting to collect on the nonexistent alleged debt. It did not validate the alleged debt. It included a fraudulent affidavit from Charlene Sandlin.

119. On June 29, 2007, AllianceOne initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

120. On or about February 4, 2009, AllianceOne sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

121. On November 20, 2007, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

122. On November 26, 2007, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

123. On January 12, 2008, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

124. On January 15, 2008, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

125. On or about July 6, 2009, Regions sent Plaintiff a letter confirming that it had no permissible purpose for the pulls.

126. GE has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

127. GE has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

128. GE did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

129. On February 6, 2008, GE sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

130. On May 28 2008, GE initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

131. Upon belief and information, GE transferred the account to NCO for collection on the alleged debt without disclosing that the debt was disputed.

132. On October 12, 2007, NCO sent Plaintiff a letter claiming that it had closed the account.

133. In April 2009, NCO initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

134. Upon belief and information, NCO transferred the account to B-Line for collection on the alleged debt without disclosing that the debt was disputed.

135. Upon belief and information, B-Line transferred the account to B-Real for collection on the alleged debt without disclosing that the debt was disputed.

136. Upon belief and information, B-Real transferred the account to Phillips for collection on the alleged debt without disclosing that the debt was disputed.

137. On May 4, 2009, Phillips initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

138. On or about May 6, 2009, Phillips sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

139. On May 8, 2009, Phillips initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

140. On May 12, 2009, Plaintiff sent a letter to Phillips demanding validation of the alleged debt. The letter was sent by certified mail and received by Avalon on May 15, 2009.

141. Phillips did not respond to the letter.

142. Upon belief and information, Phillips transferred the account to Avalon for collection on the alleged debt without disclosing that the debt was disputed.

143. On or about September 2, 2009, B-Line, B-Real, and Avalon sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

144. On September 8, 2009, Plaintiff sent a letter to Avalon demanding validation of the alleged debt. The letter was sent by certified mail and received by Avalon on September 11, 2009.

145. On or about September 22, 2009, B-Line, B-Real, Avalon sent Plaintiff a letter. It did not validate the alleged debt.

146. Capital One has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

147. Capital One has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

148. Capital One did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

149. On June 14, 2008, Capital One Bank initiated a pull of Plaintiff's credit report from Equifax without permissible purpose.

150. On August 4, 2008, Plaintiff accepted an offer of judgment against Capital One in a similar lawsuit. After the filing of that lawsuit, Capital One continued to violate the law. Those later violations were not part of the previous lawsuit.

151. First Premier has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

152. First Premier has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account is in dispute.

153. First Premier did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

154. On or about August 25, 2008, First Premier sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

155. Collectcorp called Plaintiff at home at least 75 times between December 3, 2008 and April 20, 2009 and on his cell phone at least five times between December 16, 2008 and January 2, 2009 attempting to collect on a nonexistent alleged debt. On some days Collectcorp called Plaintiff several times.

156. ACS has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

157. ACS has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account is in dispute.

158. ACS did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

159. On January 17, 2009, Plaintiff sent a letter to ACS demanding validation of an alleged debt. The letter was sent by certified mail and received by ACS on January 21, 2009.

160. ACS did not respond to the letter.

161. SunTrust has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

162. SunTrust has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

163. SunTrust did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

164. On January 17, 2009, Plaintiff sent a letter to SunTrust demanding validation of an alleged debt. The letter was sent by certified mail and received by SunTrust on January 22, 2009.

165. SunTrust did not respond to the letter.

166. In April 2009, National reported a nonexistent alleged debt to the credit bureaus. It did not notify Plaintiff that it was doing so or attempting to collect on an alleged debt.

167. On April 22, 2009, Plaintiff sent a letter to National demanding validation of the alleged debt. The letter was sent by certified mail and received by National on April 27, 2009.

168. On or about June 1, 2009, National sent a letter to Plaintiff admitting that there was no debt.

169. On October 7, 2009, Leading initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

170. On or about October 9, 2009, Leading and Galaxy sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

171. On October 17, 2009, Plaintiff sent a letter to Leading demanding validation of the alleged debt. The letter was sent by certified mail and received by Leading on October 19, 2009.

172. Leading did not respond to the letter.

173. American Express has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

174. American Express has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

175. American Express did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

176. CitiFinancial has reported false information about Plaintiff to credit reporting agencies and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

177. CitiFinancial has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

178. CitiFinancial did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

179. Plaintiff requests leave of the Court to add as a Defendant any natural person who is found to have obtained Plaintiff's credit report by willfully using false pretenses or knowingly without a permissible purpose.

180. Plaintiff requests leave of the Court to amend his complaint to include counts of fraud and/or Civil RICO if it can be determined that any of the Defendants have engaged in this behavior.

181. Plaintiff requests the Court to take the appropriate action if it can be determined that any of the Defendants or their representatives have committed criminal activities, such as obtaining Plaintiff's credit report by willfully using false pretenses.

## COUNT I
### VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 BY DEFENDANTS EQUIFAX, EXPERIAN, TRANS UNION, CBC, CHEXSYSTEMS, LEXISNEXIS RISK, LEXISNEXIS SCREENING, JEFFERSON, MANN, ERSKINE, BANK OF AMERICA, HSBC, CHASE, CAPITAL MANAGEMENT, PFG, BOUDREAU, ALLIANCEONE, REGIONS, GE, NCO, PHILLIPS, CAPITAL ONE, FIRST PREMIER, SUNTRUST, ACS, NATIONAL, LEADING, AMERICAN EXPRESS, AND CITIFINANCIAL

182. Paragraphs 1 through 181 are realleged as though fully set forth herein.

183. Plaintiff is a consumer within the meaning of §1681a(c).

184. Equifax, Experian, Trans Union, CBC, ChexSystems, LexisNexis Risk, and LexisNexis Screening are consumer reporting agencies as defined in §1681(f), regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in §1681(a)(b), to third parties for monetary compensation.

185. Bank of America, HSBC, Chase, GE, Capital One, First Premier, SunTrust, ACS, National, American Express, and CitiFinancial are furnishers of information within the meaning of §1681s-2.

186. For, at least, two years preceding this suit through the present, Equifax, Experian, Trans Union, CBC, ChexSystems, LexisNexis Risk, and LexisNexis Screening have reported and continue to report to numerous persons and entities inaccurate, misleading, and unverifiable adverse information about Plaintiff. This information has consisted of numerous delinquent tradelines and inquiries.

187. Equifax, Experian, Trans Union, CBC, ChexSystems, LexisNexis Risk, and LexisNexis Screening reported this inaccurate and adverse information despite receiving numerous written notices, electronic notices, and telephone contacts by Plaintiff disputing the inaccurate information.

188. §1618(n) provides for liability against a consumer reporting agency that willfully fails to comply with any requirement imposed by FCRA.

189. §1681e(b) provides:

17

"Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

190. §1681i(a) provides:

"If the completeness or accuracy of any item of information contained in a consumer's file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information....If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information....

191. §1681i(b) provides:

"If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one-hundred words if it provides a consumer with assistance in writing a clear summary of the dispute."

192. §1681i(c) provides:

"Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer statement or a clear and accurate clarification or summary thereof."

193. §1681b(f) provides:

"A person shall not use or obtain a consumer report for any purpose unless—
    (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
    (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

194. §1681s-2 provides:

"After receiving notice pursuant to section §1681i of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section §1681i;
    (C) report the results of the investigation to the consumer reporting agency;
    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–

(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

195. §1681s-2 provides:
"If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer."

196. Equifax, Experian, Trans Union, CBC, ChexSystems, LexisNexis Risk, and LexisNexis Screening violated the FCRA. Defendant's violations include, but are not limited to, the following:
a) failing, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report;
b) failing to provide all of the information on file, in violation of §1681(g);
c) failing to provide trained personnel to explain to Plaintiff the information in his file, in violation of §1681(h)(c);
d) failing to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, in violation of §1681(i)(a);
e) failing to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof in violation of §1681(i)(c);
f) failing to properly advise Plaintiff of his ability to make a consumer explanation;
g) failing to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff;
h) failing to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or by failing to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor;
i) failing to permanently correct Plaintiff's report after repeated notification by Plaintiff;
j) failing to properly reinvestigate Plaintiff's disputes; and by
k) concealing from or misrepresenting facts to Plaintiff regarding his report.

197. Jefferson, Mann, Erskine, Bank of America, HSBC, Chase, Capital Management, PFG, Boudreau, AllianceOne, Regions, GE, NCO, Phillips, Capital One, and Leading violated the FCRA. Defendant's violations include, but are not limited to, the following:
(a) Jefferson, Mann, Erskine, Bank of America, HSBC, Chase, Capital Management, PFG, Boudreau, AllianceOne, Regions, GE, NCO, Phillips, Capital One, and Leading willfully violated §1681b(f) by willfully using false pretenses or knowingly without a permissible purpose to obtain Plaintiff's consumer report, by falsely representing or certifying that the report was being obtained for a permissible purpose as defined by §1681b.
(b) Bank of America, HSBC, Chase, GE, Capital One, First Premier, ACS, SunTrust, National, American Express, and CitiFinancial violated § 1681s-2 by not properly

conducting and reporting reinvestigations of information disputed by Plaintiff through the credit reporting agencies.

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Experian, Trans Union, CBC, ChexSystems, LexisNexis Risk, LexisNexis Screening, Jefferson, Mann, Erskine, Bank of America, HSBC, Chase, Capital Management, PFG, Boudreau, AllianceOne, Regions, GE, NCO, Phillips, Capital One, First Premier, SunTrust, ACS, National, Leading, American Express, and CitiFinancial for actual or statutory damages, and punitive damages, attorney's fees and court costs, and grant such other and further relief as the court deems just and proper, pursuant to 15 U.S.C. §1681(n) and 15 U.S.C. §1681(o).

## COUNT II
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692
## BY DEFENDANTS JEFFERSON, CHASE, PFG, BOUDREAU, ALLIANCEONE, NCO, B-LINE, B-REAL, PHILLIPS, AVALON, COLLECTCORP, SUNTRUST, ACS, NATIONAL, LEADING, AND GALAXY

198. Paragraphs 1 through 181 are realleged as though fully set forth herein.

199. Plaintiff is a consumer within the meaning of §1692a(3).

200. Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading and Galaxy are debt collectors within the meaning of §1692a(6).

201. Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading and Galaxy violated the FDCPA. Defendant's violations include, but are not limited to, the following:
   (a) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §1692e(2) by falsely representing the character, amount, or legal status of any debt.
   (b) Collectcorp violated §1692e(4) by stating that nonpayment of any debt would result in garnishment.
   (c) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §1692e(5) by threatening to take any action that could not legally be taken or that was not intended to be taken.
   (d) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
   (e) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated

§1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(f) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §1692e(11) by failing to warn that it was a debt collector.

(g) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(h) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading and Galaxy violated §1692g by failure to send a validation notice within five days of the initial communication.

(i) Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading and Galaxy violated §1692g(b) by not ceasing collection efforts until the debt was validated.

WHEREFORE, Plaintiff demands judgment for damages against Jefferson, Chase, PFG, Boudreau, AllianceOne, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

## COUNT III
## VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI) BY DEFENDANTS JEFFERSON, BANK OF AMERICA, CHECKNET, CHASE, CAPITAL MANAGEMENT, FIRSTSOURCE, PFG, BOUDREAU, ALLIANCEONE, GE, NCO, B-LINE, B-REAL, PHILLIPS, AVALON, CAPITAL ONE, FIRST PREMIER, COLLECTCORP, SUNTRUST, ACS, NATIONAL, LEADING, GALAXY

202. Paragraphs 1 through 181 are realleged as though fully set forth herein.

203. Plaintiff is a consumer within the meaning of §559.55(2).

204. Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Capital One, First Premier, Collectcorp, SunTrust, ACS, National, Leading, Galaxy, and American Express are debt collectors within the meaning of §559.55(6).

205. Defendants Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Capital One, First Premier, Collectcorp, SunTrust, ACS, National, Leading, Galaxy, and American Express violated the FCCPA. Defendants' violations include, but are not limited to, the following:

(a) Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Capital

One, First Premier, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §559.72(3) by not telling Plaintiff that it would disclose to another information affecting Plaintiff's reputation for credit worthiness without also informing Plaintiff that the existence of the dispute would also be disclosed.

(b) Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Capital One, First Premier, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §559.72(6) by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact.

(c) Checknet, Capital Management, PFG, and Collectcorp violated §559.72(7) by willfully communicating with Plaintiff with such frequency as could reasonably be expected to harass Plaintiff.

(d) Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Capital One, First Premier, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

(e) Checknet, Capital Management, PFG, and Collectcorp violated §559.72(15) by refusing to provide adequate identification of herself or himself or her or his employer or other entity whom she or he represents when requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt;

WHEREFORE, Plaintiff demands judgment for damages against Jefferson, Bank of America, Checknet, Chase, Capital Management, Firstsource, PFG, Boudreau, AllianceOne, GE, NCO, B-Line, B-Real, Phillips, Avalon, Collectcorp, SunTrust, ACS, National, Leading, and Galaxy for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77.

## COUNT IV
## INJUNCTIVE RELIEF, 15 U.S.C §1681

206. Paragraphs 1 through 181 are realleged as though fully set forth herein.

207. Information contained in Plaintiff's credit files is inaccurate, misleading, and/or unverifiable.

208. Without permanent removal of such inaccurate, misleading, and/or unverifiable information, there is no remedy at law for Plaintiff.

209. Plaintiff's damages are irreparable unless all inaccurate, misleading, and/or unverifiable information is permanently removed.

210. Injunctive relief is provided by 15 U.S.C §1681.

WHEREFORE, Plaintiff demands that the Court, mandatorily, enjoin Experian, Trans Union, ChexSystems, LexisNexis Risk, and LexisNexis Screening to permanently delete any

derogatory information on Plaintiff's credit reports that are inaccurate, misleading, and/or unverifiable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: January 21, 2010

Respectfully submitted,

*Larry Rumbough*

Larry Rumbough
840 Lilac Trace Lane
Orlando, FL 32828
321-331-1859