**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

LARRY RUMBOUGH, individually
and on behalf of others similarly situated,
as a private attorney general;

Plaintiff,

Case No. 6:10-cv-117-ORL-KRS

-v-

EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; CHEXSYSTEMS; LEXISNEXIS RISK DATA RETRIEVAL SERVICES LLC; MANN BRACKEN, LLC; LAW OFFICES OF ERSKINE & FLEISHER; BANK OF AMERICA CORPORATION; FIA CARD SERVICES; HSBC CARD SERVICES, INC.; JPMORGAN CHASE & CO.; ALLIANCEONE RECEIVABLES MANAGEMENT, INC.; REGIONS BANK; NCO FINANCIAL SYSTEMS, INC.; B-LINE, LLC; B-REAL, LLC; AVALON FINANCIAL SERVICES, LLC; CAPITAL ONE BANK; FIRST PREMIER BANK; COLLECTCORP CORPORATION; SUNTRUST BANK; ACS EDUCATION SERVICES, INC.; and CITIFINANCIAL, INC.;

Defendants.

**FIRST AMENDED COMPLAINT**

Plaintiff, Larry Rumbough, individually and on behalf of all others similarly situated, as a private attorney general, hereby sues Defendants, EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION LLC; CHEXSYSTEMS; LEXISNEXIS RISK DATA RETRIEVAL SERVICES; MANN BRACKEN, LLC; LAW OFFICES OF ERSKINE & FLEISHER; BANK OF AMERICA CORPORATION; FIA CARD SERVICES; HSBC CARD SERVICES, INC.; JPMORGAN CHASE & CO.; ALLIANCEONE RECEIVABLES MANAGEMENT, INC.; REGIONS BANK; NCO FINANCIAL SYSTEMS, INC.; B-LINE, LLC; B-REAL, LLC; AVALON FINANCIAL SERVICES, LLC; CAPITAL ONE BANK; FIRST PREMIER BANK; COLLECTCORP CORPORATION; SUNTRUST BANK; ACS EDUCATION SERVICES, INC.; and CITIFINANCIAL, INC.; and alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages brought for damages for violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. §1681 *et seq.*; for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 *et seq.*; for damages for damages for violations of the Florida Consumer Collection Practices Act (FCCPA), Fla. Stat. §559(Part VI) *et seq.*, and for damages for violations of the Telephone Consumer Protection Act (TCPA) 47 U.S.C. §227.

2. Plaintiff contends that the credit reporting agency Defendants have violated such laws by repeatedly and willfully issuing false consumer credit reports concerning Plaintiff, resulting in credit denials, credit delays, inability to apply for credit, a reduction in his credit score, financial loss, loss of use of funds, invasion of privacy, mental anguish, humiliation, a loss of reputation, and expenditures for attorney's fees and costs. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

3. Plaintiff contends that the collection agency Defendants have violated such laws by repeatedly harassing Plaintiff in attempts to collect alleged but nonexistent debt, obtaining or furnishing his credit reports illegally, knowingly reporting false information to the credit reporting agencies, and refusing to properly investigate Plaintiff's disputes of information transmitted through the credit reporting agencies. In many cases they have conspired with each other in engaging in these actions. For the most part, Plaintiff's demands to the Defendants that they cease these illegal, and in some cases possibly criminal, activity, have met with either no response or continued illegal activity.

4. Upon belief and information, Plaintiff contends that many of these practices are widespread for some or all of the Defendants. Therefore, he is suing on behalf of all others similarly situated, and as a private attorney general. Plaintiff intends to propound discovery to Defendants identifying these other individuals who have suffered similar violations. He also intends to seek attorney's fees from Defendants as a private attorney general.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is conferred by 15 U.S.C. §1681p, 15 U.S.C. §1692k), 47 U.S.C. §227(f)(2), and Fla. Stat. §559.77.

6. Venue is proper in this Circuit pursuant to 28 U.S.C. §1391b and Fla. Stat. §559.77.

7. This is an action for damages which exceed $75,000.00.

8. Plaintiff, LARRY RUMBOUGH, is a natural person and is a resident of the State of Florida.

9. Defendant, EQUIFAX INFORMATION SERVICES LLC ("Equifax"), is a Georgia limited liability company, authorized to do business in Florida.

10. Defendant, EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") is an Ohio corporation, authorized to do business in Florida.

11. Defendant, TRANS UNION LLC ("Trans Union"), is a Delaware limited liability company, authorized to do business in Florida.

12. Defendant, CHEXSYSTEMS ("ChexSystems"), is an unknown entity, not authorized to do business in Florida.

13. Defendant, LEXISNEXIS RISK DATA RETRIEVAL SERVICES LLC ("LexisNexis"), is a Georgia LLC, authorized to do business in Florida.

14. Defendant, MANN BRACKEN, LLC ("Mann"), is a Georgia limited liability company, not authorized to do business in Florida.

15. Defendant, LAW OFFICES OF ERSKINE & FLEISHER ("Erskine"), is an unknown entity.

16. Defendant, BANK OF AMERICA CORPORATION ("Bank of America"), is a Delaware corporation, authorized to do business in Florida.

17. Defendant, FIA CARD SERVICES, N.A. (FIA) is an unknown entity.

18. Defendant, HSBC CARD SERVICES, INC. ("HSBC"), is a Delaware corporation, authorized to do business in Florida.

19. Defendant, JPMORGAN CHASE & CO. ("Chase"), is a Delaware corporation, authorized to do business in Florida.

20. Defendant, ALLIANCEONE RECEIVABLES MANAGEMENT, INC. ("Allianceone"), is a Delaware corporation, authorized to do business in Florida.

21. Defendant, REGIONS BANK ("Regions"), is an Alabama corporation, authorized to do business in Florida.

22. Defendant, NCO FINANCIAL SYSTEMS, INC. ("NCO"), is a Pennsylvania corporation, authorized to do business in Florida.

23. Defendant, B-LINE, LLC ("B-Line"), is an unknown entity.

24. Defendant, B-REAL, LLC ("B-Real"), is a Delaware limited liability company, authorized to do business in Florida.

25. Defendant, AVALON FINANCIAL SERVICES, LLC ("Avalon"), is a Delaware limited liability company, authorized to do business in Florida.

26. Defendant, CAPITAL ONE BANK ("Capital One"), is an unknown entity.

27. Defendant, FIRST PREMIER BANK ("First Premier"), is a Delaware corporation, not authorized to do business in Florida.

28. Defendant, COLLECTCORP CORPORATION ("Collectcorp"), is a Delaware limited partnership, authorized to do business in Florida.

29. Defendant, SUNTRUST BANK ("SunTrust"), is a Georgia corporation, authorized to do business in Florida.

30. Defendant, ACS EDUCATION SERVICES, INC. ("ACS"), is a Delaware corporation, authorized to do business in Florida.

31. Defendant, CITIFINANCIAL, INC. ("CitiFinancial"), is a Maryland corporation, authorized to do business in Florida.

32. All conditions precedent to the bringing of this action have been performed, waived or excused.

**FACTUAL ALLEGATIONS**

33. Plaintiff sent dispute letters regarding inaccuracies on his credit report to Equifax on May 10, 2008, June 27, 2008, September 26, 2008, and May 15, 2009. The details of Plaintiff's disputes are outlined in those letters.

34. Despite those letters, Equifax has refused to delete, correct, place in dispute, and/or print Plaintiff's consumer statement for the following item: "HSBC 548955511387"

35. Equifax failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiffs file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiffs statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiffs report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiffs disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

36. Plaintiff sent dispute letters to Experian regarding inaccuracies on his credit report on January 10, 2008, March 20, 2008, May 10, 2008, June 27, 2008, August 12, 2008, September 26, 2008, November 21, 2008, January 5, 2009, February 20, 2009, May 15, 2009, and September 25, 2009. The details of Plaintiff's disputes are outlined in those letters.

37. Despite those letters, Experian has refused to delete, correct, place in dispute, and/or print Plaintiff's consumer statement for the following items: "US Bkpt Ct FL Orlando 0602700ABB", US Bkpt Ct FL Orlando 0702298ABB", "Orange Co Cir Court BK 8348PG4985SQ2", "Amex 21000955830....", "Cap One Bk 479124188621....", "Citifinancial 607209081014....", "Countrywide Home Loans 323....", "First Premier 517800708329....", "HSBC 548955511387....", "HSBC/Best Buy 700109300031....", "HSBC/Rhodes 701213410200....", "Midland Mortgage Co. 4690....", and "BAC Home Loans".

38. Experian provided Plaintiff's consumer report to Oliphant Financial Corpo on April 30, 2007, Phillips & Cohen on May 4, 2009, and Bank of America on December 16, 2008, among others, without verifying that those entities had a permissible purpose to obtain it.

39. Experian failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiffs file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiffs statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiffs report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiffs disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

40. Plaintiff sent dispute letters regarding inaccuracies on his credit report to Trans Union on January 10, 2008, March 20, 2008, May 10, 2008, June 27, 2008, August 12, 2008, September 26, 2008, November 21, 2008, January 5, 2009, February 20, 2009, May 15, 2009, and September 25, 2009. The details of Plaintiff's disputes are outlined in those letters.

41. Despite those letters, Trans Union has refused to delete, correct, place in dispute, and/or print Plaintiff's consumer statement for the following items: "Florida Federal Court 702298", "Florida Federal Court 602700", "First Premier 5178007083290650", "HSBC 5489555113877007", and "HSBC 5488975010100843".

42. Transunion provided Plaintiff's consumer report to Mann Bracken on December 10, 2007, Mann Bracken on January 9, 2008, Pinnacle on April 6, 2009, and Leading Edge on

October 7, 2009, among others, without verifying that those entities had a permissible purpose to obtain it.

43. Trans Union failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

44. Plaintiff sent dispute letters to ChexSystems regarding inaccuracies on his credit report on May 10, 2008, June 27, 2008, August 12, 2008, September 26, 2008, November 21, 2008, January 5, 2009, February 20, 2009, May 15, 2009, and September 25, 2009. The details of Plaintiff's disputes are outlined in those letters.

45. ChexSystems has refused to delete, correct, place in dispute, and/or print Plaintiff's consumer statement for the following item: "Washington Mutual Bank 083100003658045"

46. ChexSystems provided Plaintiff's consumer report two times to Washington Mutual Bank on May 10, 2007 without verifying that that entity had a permissible purpose to obtain it.

47. ChexSystems failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

48. LexisNexis failed, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report; failed to provide all of the information on file, failed to provide trained personnel to explain to Plaintiff the information in his file, failed to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, failed to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof, failed to properly advise Plaintiff of his ability to make a consumer explanation, failed to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff; failed to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or failed to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor; failed to permanently correct Plaintiff's report after repeated notification by Plaintiff; failed to properly reinvestigate Plaintiff's disputes; and concealed from or misrepresented facts to Plaintiff regarding his report.

49. LexisNexis has reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and Innovis, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

50. LexisNexis did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

51. LexisNexis has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

52. The false information pertains to an alleged lien in Orange County Circuit Court, which does not exist. Plaintiff called LexisNexis on August 22, 2008 and June 9, 2010 and demanded that LexisNexis correct the inaccurate information. LexisNexis refused to do so.

53. On March 16, 2005, Mann initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

54. On July 29, 2005, Mann initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

55. On May 25, 2007, Mann initiated a hard pull of Plaintiff's credit report from ChexSystems without permissible purpose, thereby reducing his credit score.

56. In June 2007, Mann initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

57. On January 9, 2008, Mann initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

58. On April 25, 2005, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

59. On April 27, 2005, Erskine initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score.

60. On March 13, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

61. On March 14, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

62. On July 31, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

63. On August 31, 2006, Erskine initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

64. Bank of America, also known as Countrywide, and FIA have reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and Innovis, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

65. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

66. Bank of America and FIA did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

67. Bank of America and FIA have repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

68. On June 7, 2006, Bank of America and FIA initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

69. On October 7, 2006, Bank of America and FIA initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

70. On December 16, 2008, Bank of America and FIA initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

71. HSBC has reported false information about Plaintiff to credit reporting agencies including Equifax, Experian, and Trans Union, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

72. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

73. HSBC did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

74. HSBC has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

75. On October 18, 2006, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

76. On May 24, 2007, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

77. On June 6, 2007, HSBC initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

78. Chase, also known as Washington Mutual Bank, has reported false information about Plaintiff to credit reporting agencies, including ChexSystems, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

79. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

80. Chase did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

81. Chase has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

82. On May 10, 2007, Chase initiated two hard pulls of Plaintiff's credit report from ChexSystems without permissible purpose, thereby reducing his credit score.

83. On January 29, 2010, Chase initiated a pull of Plaintiff's credit report from Experian without permissible purpose.

84. On or about September 1, 2009, Chase sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

85. On September 29, 2009 Plaintiff sent a letter to Chase demanding validation of the alleged debt. The letter was sent by certified mail and received by Chase on October 1, 2009.

86. Chase did not respond to the letter.

87. Chase transferred the account to Capital Management Services, LP; FirstSource Advantage, LLC; and PFG of Minnesota, Inc. for collection on the alleged debt without disclosing that the debt was disputed.

88 On June 29, 2007, AllianceOne initiated a hard pull of Plaintiff's credit report from Experian without permissible purpose, thereby reducing his credit score.

89. On or about February 4, 2009, AllianceOne sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

90. On November 20, 2007, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

91. On November 26, 2007, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

92. On January 12, 2008, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

93. On January 15, 2008, Regions initiated a hard pull of Plaintiff's credit report from Equifax without permissible purpose, thereby reducing his credit score.

94. On or about July 6, 2009, Regions sent Plaintiff a letter confirming that it had no permissible purpose for the pulls.

95. On July 10, 2006, NCO initiated a hard pull of Plaintiff's credit report from Trans Union without permissible purpose, thereby reducing his credit score

96. On October 12, 2007, NCO sent Plaintiff a letter claiming that it had closed the account.

97. In April 2009, NCO initiated a pull of Plaintiff's credit report from Trans Union without permissible purpose.

98. Upon belief and information, NCO transferred the account to B-Line for collection on the alleged debt without disclosing that the debt was disputed.

99. Upon belief and information, B-Line transferred the account to B-Real for collection on the alleged debt without disclosing that the debt was disputed.

100. Upon belief and information, B-Real transferred the account to Phillips & Cohen Associates, Ltd., Corp. for collection on the alleged debt without disclosing that the debt was disputed.

101. On or about September 2, 2009, B-Line, B-Real, and Avalon sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

102. On September 8, 2009, Plaintiff sent a letter to Avalon demanding validation of the alleged debt. The letter was sent by certified mail and received by Avalon on September 11, 2009.

103. On or about September 22, 2009, B-Line, B-Real, Avalon sent Plaintiff a letter. It did not validate the alleged debt.

104. Capital One has reported false information about Plaintiff to credit reporting agencies including Equifax, Experian, and Trans Union, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

105. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

106. Capital One did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

107. Capital One has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

108. On June 14, 2008, Capital One Bank initiated a pull of Plaintiff's credit report from Equifax without permissible purpose.

109. On August 4, 2008, Plaintiff accepted an offer of judgment against Capital One in a similar lawsuit. After the filing of that lawsuit, Capital One continued to violate the law. Those later violations were not part of the previous lawsuit.

110. First Premier has reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and Innovis, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

111. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

112. First Premier did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

113. First Premier has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account is in dispute.

114. On or about August 25, 2008, First Premier sent Plaintiff a letter attempting to collect on a nonexistent alleged debt.

115. On or about September 5, 2008, Collectcorp sent a letter attempting to collect on a nonexistent alleged debt.

116. On September 13, 2008, Plaintiff sent a letter to Collectcorp demanding validation of the alleged debt. The letter was sent by certified mail and received by Collectcorp on September 15, 2008.

117. Collectcorp did not respond to the letter.

118. Collectcorp called Plaintiff at home at least 75 times between December 3, 2008 and April 20, 2009 and on his cell phone at least five times between December 16, 2008 and January 2, 2009 attempting to collect on a nonexistent alleged debt. On some days Collectcorp called Plaintiff several times.

119. Plaintiff repeatedly demanded that Collectcorp cease calling him. Plaintiff was distressed by Collectcorp's continual harassment.

120. Many of the calls that Collectcorp made were prerecorded.

121. Throughout the entire period that Collectcorp was calling, Plaintiff's residential and cellular phone numbers were registered on the National Do Not Call Registry.

122. Plaintiff has never owed a debt to Collectcorp. Collectcorp is well aware of this fact.

123. ACS, operating on behalf of SunTrust Bank, has reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

124. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

125. ACS did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

126. ACS has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account is in dispute.

127. On January 17, 2009, Plaintiff sent a letter to ACS demanding validation of the alleged debt. The letter was sent by certified mail and received by ACS on January 21, 2009.

128. ACS did not respond to the letter.

129. SunTrust, also known as Crestar Bank, has reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

130. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

131. SunTrust did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

132. SunTrust has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

133. SunTrust did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

134. On January 17, 2009, Plaintiff sent a letter to SunTrust demanding validation of the alleged debt. The letter was sent by certified mail and received by SunTrust on January 22, 2009.

135. SunTrust did not respond to the letter.

136. CitiFinancial has reported false information about Plaintiff to credit reporting agencies, including Equifax, Experian, and Trans Union, and continued to do so despite Plaintiff's numerous disputes about the account that were transmitted through the credit reporting agencies.

137. The inaccuracies include, but are not limited to, the amount of the alleged debt, the date of alleged delinquency, the status of alleged delinquency, and the status of dispute by Plaintiff.

138. CitiFinancial did not provide a notice of such furnishing of negative information, in writing, to Plaintiff.

139. CitiFinancial has repeatedly failed to conduct a proper investigation of Plaintiff's disputes and repeatedly failed to inform the credit reporting agencies that the account was in dispute.

140. Plaintiff requests leave of the Court to add as a Defendant any natural person who is found to have obtained Plaintiff's credit report by willfully using false pretenses or knowingly without a permissible purpose.

141. Plaintiff requests leave of the Court to amend his complaint to include counts of fraud and/or Civil RICO if it can be determined that any of the Defendants have engaged in this behavior.

142. Plaintiff requests the Court to take the appropriate action if it can be determined that any of the Defendants or their representatives have committed criminal activities, such as obtaining Plaintiff's credit report by willfully using false pretenses.

**COUNT I**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 BY DEFENDANTS EQUIFAX, EXPERIAN, TRANS UNION, CHEXSYSTEMS, LEXISNEXIS, MANN, ERSKINE, BANK OF AMERICA, FIA, HSBC, CHASE, ALLIANCEONE, REGIONS, NCO, CAPITAL ONE, FIRST PREMIER, SUNTRUST, ACS, AND CITIFINANCIAL**

143. Paragraphs 1 through 142 are realleged as though fully set forth herein.

144. Plaintiff is a consumer within the meaning of §1681a(c).

145. Equifax, Experian, Trans Union, ChexSystems, and LexisNexis are consumer reporting agencies as defined in §1681(f), regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in §1681(a)(b), to third parties for monetary compensation.

146. LexisNexis, Bank of America, FIA, HSBC, Chase, Capital One, First Premier, SunTrust, ACS, and CitiFinancial are furnishers of information within the meaning of §1681s-2.

147. For, at least, two years preceding this suit through the present, Equifax, Experian, Trans Union, ChexSystems, and LexisNexis have reported and continue to report to numerous persons and entities inaccurate, misleading, and unverifiable adverse information about Plaintiff. This information has consisted of numerous delinquent tradelines and inquiries.

148. Equifax, Experian, Trans Union, ChexSystems, and LexisNexis reported this inaccurate and adverse information despite receiving numerous written notices, electronic notices, and telephone contacts by Plaintiff disputing the inaccurate information.

149. §1618(n) provides for liability against a consumer reporting agency that willfully fails to comply with any requirement imposed by FCRA.

150. §1681e(b) provides:
"Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

151. §1681i(a) provides:
"If the completeness or accuracy of any item of information contained in a consumer's file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information....If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information....

152. §1681i(b) provides:
"If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one-hundred words if it provides a consumer with assistance in writing a clear summary of the dispute."

153. §1681i(c) provides:
"Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer statement or a clear and accurate clarification or summary thereof."

154. §1681b(f) provides:
"A person shall not use or obtain a consumer report for any purpose unless—
    (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
    (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

155. §1681s-2 provides:
"After receiving notice pursuant to section §1681i of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section §1681i;
    (C) report the results of the investigation to the consumer reporting agency;
    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for

purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly–
(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

156. §1681s-2 provides:
"If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 603(p) furnishes negative information to such an agency regarding credit extended to a customer, the financial institution shall provide a notice of such furnishing of negative information, in writing, to the customer."

157. Equifax, Experian, Trans Union, ChexSystems, and LexisNexis violated the FCRA. Defendant's violations include, but are not limited to, the following:

a) failing, in the preparation of Plaintiff's reports, to follow reasonable procedures to assure the maximum possible accuracy of the information in the report;

b) failing to provide all of the information on file, in violation of §1681(g);

c) failing to provide trained personnel to explain to Plaintiff the information in his file, in violation of §1681(h)(c);

d) failing to delete incomplete, misleading, and inaccurate information in Plaintiff's file after being advised of such by Plaintiff or after conducting reinvestigations, in violation of §1681(i)(a);

e) failing to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof in violation of §1681(i)(c);

f) failing to properly advise Plaintiff of his ability to make a consumer explanation;

g) failing to properly notify, train or otherwise advise its own subscribers about purging their records of inaccurate information concerning Plaintiff;

h) failing to establish any procedure by which reinvestigation would occur immediately upon the republication by the credit grantor of the inaccurate information or by failing to have a reasonable procedure by which to immediately notify the Plaintiff that the same inaccurate information, previously deleted or disputed, was re-reported by the credit grantor;

i) failing to permanently correct Plaintiff's report after repeated notification by Plaintiff;

j) failing to properly reinvestigate Plaintiff's disputes; and by

k) concealing from or misrepresenting facts to Plaintiff regarding his report.

158. LexisNexis, Mann, Erskine, Bank of America, FIA, HSBC, Chase, AllianceOne, Regions, NCO, and Capital One violated the FCRA. Defendant's violations include, but are not limited to, the following:

(a) Mann, Erskine, Bank of America, FIA, HSBC, Chase, AllianceOne, Regions, NCO, and Capital One willfully violated §1681b(f) by willfully using false pretenses or knowingly without a permissible purpose to obtain Plaintiff's consumer report, by falsely representing or certifying that the report was being obtained for a permissible purpose as defined by §1681b.

(b) LexisNexis, Bank of America, FIA, HSBC, Chase, Capital One, First Premier, ACS, SunTrust, and CitiFinancial violated § 1681s-2 by not properly conducting and

reporting reinvestigations of information disputed by Plaintiff through the credit reporting agencies.

WHEREFORE, Plaintiff demands judgment for damages against Equifax, Experian, Trans Union, ChexSystems, LexisNexis, Mann, Erskine, Bank of America, FIA, HSBC, Chase, AllianceOne, Regions, NCO, Capital One, First Premier, SunTrust, ACS, and CitiFinancial for actual or statutory damages, and punitive damages, attorney's fees and court costs, and grant such other and further relief as the court deems just and proper, pursuant to 15 U.S.C. §1681(n) and 15 U.S.C. §1681(o).

**COUNT II**
**VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), 15 U.S.C. §1692**
**BY DEFENDANTS CHASE, ALLIANCEONE, NCO, B-LINE, B-REAL, AVALON, COLLECTCORP, SUNTRUST, AND ACS**

159. Paragraphs 1 through 142 are realleged as though fully set forth herein.

160. Plaintiff is a consumer within the meaning of §1692a(3).

161. Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS, are debt collectors within the meaning of §1692a(6).

162. Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS, violated the FDCPA. Defendant's violations include, but are not limited to, the following:

(a) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692e(2) by falsely representing the character, amount, or legal status of any debt.

(b) Collectcorp violated §1692e(4) by stating that nonpayment of any debt would result in garnishment.

(c) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692e(5) by threatening to take any action that could not legally be taken or that was not intended to be taken.

(d) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(e) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(f) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692e(11) by failing to warn that it was a debt collector.

(g) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692f(1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

    (h) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692g by failure to send a validation notice within five days of the initial communication.
(i) Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS violated §1692g(b) by not ceasing collection efforts until the debt was validated.

WHEREFORE, Plaintiff demands judgment for damages against Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

**COUNT III**
**VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI)**
**BY DEFENDANTS BANK OF AMERICA, CHASE, ALLIANCEONE, NCO, B-LINE, B-REAL, AVALON, CAPITAL ONE, FIRST PREMIER, COLLECTCORP, SUNTRUST, AND ACS**

163. Paragraphs 1 through 142 are realleged as though fully set forth herein.

164. Plaintiff is a consumer within the meaning of §559.55(2).

165. Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Capital One, First Premier, Collectcorp, SunTrust, and ACS are debt collectors within the meaning of §559.55(6).

166. Defendants Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Capital One, First Premier, Collectcorp, SunTrust, and ACS violated the FCCPA. Defendants' violations include, but are not limited to, the following:
(a) Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Capital One, First Premier, Collectcorp, SunTrust, and ACS violated §559.72(3) by not telling Plaintiff that it would disclose to another information affecting Plaintiff's reputation for credit worthiness without also informing Plaintiff that the existence of the dispute would also be disclosed.
(b) Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Capital One, First Premier, Collectcorp, SunTrust, and ACS violated §559.72(6) by disclosing information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact.
(c) Collectcorp violated §559.72(7) by willfully communicating with Plaintiff with such frequency as could reasonably be expected to harass Plaintiff.
(d) Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Capital One, First Premier, Collectcorp, SunTrust, and ACS violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.
(e) Collectcorp violated §559.72(15) by refusing to provide adequate identification of herself or himself or her or his employer or other entity whom she or he represents

when requested to do so by a debtor from whom she or he is collecting or attempting to collect a consumer debt;

WHEREFORE, Plaintiff demands judgment for damages against Bank of America, Chase, AllianceOne, NCO, B-Line, B-Real, Avalon, Collectcorp, SunTrust, and ACS for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77.

**COUNT IV**
**VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT (TCPA), 47 U.S.C. §227 BY DEFENDANT COLLECTCORP**

167. Paragraphs 1 through 142 are realleged as though fully set forth herein.

168. Plaintiff and Collectcorp do not have an established business relationship within the meaning of 47 U.S.C. §227.

WHEREFORE, Plaintiff demands judgment for damages against Collectcorp for statutory damages, and punitive damages, attorney's fees and costs, pursuant to 47 U.S.C. §227(b)(3) and 47 U.S.C. §227(c)(5).

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: July 22, 2010

Respectfully submitted,

Larry Rumbough

Larry Rumbough
840 Lilac Trace Lane
Orlando, FL 32828
321-331-1859

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing will be electronically mailed to all parties on the service list this 23rd day of July, 2010.

Larry Rumbough
840 Lilac Trace Lane
Orlando, FL 32828
321-331-1859